LEMMON, Justice,
dissenting.
The question in this case is whether plaintiff, who sustained a partial amputation of his foot, is entitled to receive benefits for loss of a “member”, under defendant’s accident and dismemberment policy which defines loss with regard to a foot as “physical separation at or above the ankle joint.”
After the accident the surgeon performed a Chopart amputation by removing the front and mid-foot bones of the foot, at the mid-foot and hind-foot juncture, leaving intact the calcaneus (heel) and the talus (bone above the heel).[1] The ankle joint, according to the treating physician, is located at “the dome of the talus,” where the talus of the foot and the tibia and fibula of the leg come together. These bones are shown on the following annotated exhibit:
[[Image here]]
*276 Significantly, there was not a complete amputation of the foot. In cases involving insurance coverage for loss of a member where there is less than complete amputation of the member, the central issue is whether the policy language is general or specific. J.L. Isham, Annotation, Accident Insurance: What is “Loss” of Body Member, 51 A.L.R. 4th 156 (1980). The insurance policy in the present case provided benefits for “loss of one member,” the term “member” meaning a hand, foot or eye. “Loss” is defined in part under this coverage, with regard to a foot, as “physical separation at or above the ankle joint.” Recovery of benefits under this policy therefore turns on whether the language “at or above the ankle joint” is sufficiently specific to restrict coverage or whether the language is general and ambiguous so that the coverage issue should be resolved in favor of the insured.
An expert in the field of podiatry, who examined the medical records and reports of plaintiffs treating physicians and also examined plaintiff, testified that after the amputation plaintiff was left with his rear foot, which included the talus and the calca-neus bones. He concluded that the amputation occurred below the ankle joint, where the fibula, tibia and the talus come together, leaving the ankle joint completely intact.
The orthopaedic surgeon who performed the amputation testified that the separation occurred at the juncture of the mid-foot and hind-foot, a joint which is not the ankle joint, and that the hind-foot, consisting of the calcaneus (the heel) and the talus, was left intact. He felt, however, that plaintiff should be treated as if his foot was “completely avulsed” and as if he had sustained a below-knee amputation rather than a partial foot amputation. The doctor reasoned that although plaintiff does have a little movement in his ankle, it is not a functional ankle, which was the original goal of this type of amputation. The doctor noted that the skin incision for the amputation, which included cutting of skin and ligaments, began at the ankle joint, but conceded that the level of the anatomical (as opposed to the cosmetic) amputation was entirely below the ankle joint. Most significantly, the doctor stated that the ankle joint is a medically defined point, that the amputation did not go through the ankle joint, and that the ankle joint was fully present on the foot after the amputation. Indeed, the doctor noted that the purpose of the Chopart amputation is to preserve the ankle joint.
The language “at or above the ankle joint” is unambiguous. The ankle joint is a clearly defined anatomical location in medical terminology, namely, the point where the tibia and fibula of the leg and the talus of the foot come together, as noted on the above exhibit. The policy fixes the point of physical separation necessary for coverage in clear anatomical terms. Under the plain, ordinary meaning of the term “at or above,” there was no physical separation at or above the ankle joint, the separation being entirely below the well defined joint.
While plaintiff may have lost the function of his foot and the “effectiveness of the ankle joint as a joint,” as noted by the trial judge, the majority’s conclusion that he suffered a loss by a physical separation at the ankle joint is not supported by the medical evidence. The ankle joint is located at the dome of the talus, where the talus meets the tibia and fibula; the separation was at the point where the base of the talus meets the navicular. The majority’s rejection of the policy’s unambiguous provision fixing the anatomical point when a partial amputation will be deemed the loss of a member constitutes a judicial rewriting of the policy.

. The amputation produced a "peg leg” effect which was intended to allow plaintiff to maneuver on the leg, when necessary, without crutches or prosthesis.